IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PHENG VANG,

                Petitioner,                OPINION AND ORDER

v.

                                         17-cv-902-wmc
                                         16-cr-059-wmc

UNITED STATES OF AMERICA,

                Respondent.

On September 14, 2016, a grand jury returned a superseding indictment charging Pheng Vang with four counts of violating 21 U.S.C. § 841(a)(1). Specifically, the superseding indictment charged that: (1) on or about February 11, 2016, Vang knowingly and intentionally distributed 5 grams or more of methamphetamine; (2) on or about February 12, 2016, Vang knowingly and intentionally distributed 5 grams or more of methamphetamine; (3) on or about February 18, 2016, Vang knowingly and intentionally distributed a mixture or substance containing a detectable amount of methamphetamine; and (4) on or about June 13, 2016, Vang knowingly and intentionally distributed 50 grams or more of methamphetamine. (No. 16-cr-59 (dkt. #18) 1.)

On November 14, 2016, Vang pleaded guilty to Count 4 (dkt. #37, at 22-24), and the court sentenced Vang on April 6, 2017, to 180 months imprisonment, followed by a five-year term of supervised release. (Dkt. #75, at 2, 5.) After Vang appealed, the Court of Appeals for the Seventh Circuit appointed him new counsel. *United States v. Vang*, slip op. No. 17-1825 (dkt. #18) (7th Cir. Aug. 8, 2017). However, Vang's appellate counsel

filed a motion to dismiss the appeal, which the Seventh Circuit granted on October 30, 2017. (Dkt. #24.)

In this case, Vang filed a motion under 28 U.S.C. §2255 to vacate his sentence, which the government opposes. After considering all of parties' briefings, the record of the proceedings in this court and on appeal, as well as the court's own recollection of the underlying proceedings, the court will deny Vang's motion for the reasons that follow.

## BACKGROUND

**A. Investigation into Vang's Drug-Related Activity and the Indictment**

In April 2015, based on information from a confidential informant ("CI"), police officers in Eau Claire, Wisconsin, began investigating Pheng Vang for drug-related offenses. (Govt. Br. (dkt. #9) 2.) Eventually, six different CIs corroborated Vang's connection to drug-related offenses, which in turn led officers to arrange a series of controlled buys from Vang. Additionally, on June 13, 2016, officers executing a search warrant at Vang's residence found drug notes, packaging materials and small amounts of drugs. In addition, officers located two guns in a bedroom that also contained illegal drugs and drug packaging materials.

On June 22, 2016, a grand jury returned a four-count, superseding indictment that charged Vang with: (1) knowingly and intentionally distributing 5 grams or more of methamphetamine on or about February 11, 2016; (2) knowingly and intentionally distributing 5 grams or more of methamphetamine on or about February 12, 2016; (3) knowingly and intentionally distributing a mixture or substance containing a detectable

2

amount of methamphetamine on or about February 18, 2016; and (4) knowingly and intentionally distributing 50 grams or more of methamphetamine on or about June 13, 2016.

### B. Plea Hearing

Ultimately, Vang entered a plea of guilty without a written plea agreement. During the plea hearing, Vang answered questions under oath confirming his knowledge of his rights, his understanding of the charges against him, the potential minimum and maximum sentence the court could impose, the role of the advisory federal guidelines, his desire to proceed without a plea agreement, and whether he had discussed all of these things with his attorney. (No. 16-cr-59 (dkt. #37) 4–6.) The court also explained that pleading guilty to one or more of the felonies charged may lead to loss of civil rights, including the right to hold public office, to serve on a jury, to vote, and not only to own but to even possess any firearm. (*Id.* at 11.) In addition, the court confirmed Vang's awareness that a plea of guilty may well affect his legal status in this country, and that after serving his sentence, he will almost certainly be deported. (*Id.*) Vang confirmed his understanding of all of these fundamental consequences of a plea of guilty, as well as effective waiver of his constitutional rights, including proceeding to a jury trial and freedom from self-incrimination. (*Id.* at 10–12.)

The government then made a proffer of the evidence it would have presented at trial to convince a jury that Vang was guilty of the charged crimes. To prove Count 1, a CI would have testified to participating in a controlled buy of methamphetamine from Vang at a farm in Colfax, Wisconsin. (*Id.* at 14.) A DEA crime lab analyst would also have

3

testified that the methamphetamine purchased was 98% pure and weighed 7.011 grams, plus or minus 0.262 grams. (*Id.*) As for Count 2, the same CI would have testified to another controlled buy of methamphetamine from Vang at the same farm. (*Id.* at 14–15.) Again, a DEA crime lab analyst would have testified that the methamphetamine purchased was 98% pure and weighed 13.011 grams, plus or minus 0.5 grams. (*Id.*) To prove Count 3, the same CI would have testified to buying methamphetamine from Vang at a third controlled buy at the farm in Colfax, which a DEA crime lab analyst would have testified was also 98% pure and weighed 3.707 grams, plus or minus 0.139 grams. (*Id.* at 15.) A different CI would also have testified to purchasing methamphetamine from Vang during yet another controlled buy at his home in rural Menomonie, Wisconsin, on June 13, 2016, which the CI recorded on audio and video. (*Id.* at 15–16.) A DEA crime lab analyst would similarly have testified that the methamphetamine in this transaction was 98% pure and weighed 55.1 grams, plus or minus 2.1 grams. (*Id.*)

Following the government's proffer, Vang and his attorney both acknowledged that the government could prove each of these illegal transactions, including Vang affirmatively confirming that he "did do a transaction that [prosecution counsel] spoke of happened at Colfax." (*Id.* at 16-17.) The court then proceeded to confirm with Vang the specific details related to each count of his criminal indictment, including Vang's role negotiating prices of methamphetamine, finalizing each transaction, and verifying the weight involved in each transaction. (*Id.* at 17–18.)

At that point, the court discussed with the attorneys the specific counts to which Vang would be asked to plead guilty. However, after it became apparent that the

4

government's and Vang's counsel had different understandings as to whether Vang would need to plead guilty to all four counts, the court directed counsel to confer. (*Id.* at 19–21.) Ultimately, the government agreed to allow Vang to plead guilty to just Count 4, in exchange for dismissing the remaining counts. (*Id.* at 21–22.) Before accepting Vang's plea to that count, the court again ensured that his attorney and he had discussed the consequences of pleading guilty without a plea agreement. (*Id.* at 23.)

### C. Presentence Report and Objections

Following the plea hearing, a Presentence Investigation Report ("PSR") was prepared for the court. (No. 16-cr-59 (dkt. #40).) Vang's counsel subsequently filed objections to the (1) relevant conduct conclusion; (2) calculation of the offense conduct; (3) inclusion of information from witnesses whose identities were not made known to Vang; and (4) inclusion of allegedly false allegations. Additionally, counsel requested a variance based on the relationship between so-called "Ice" or pure methamphetamine guidelines and repudiated crack guidelines. (*Id.* (dkt. #46) at 1, 8–23.)

### D. Sentencing

The court sentenced Vang on April 6, 2017. (No. 16-cr-59 (dkt. #88) 1.) The court confirmed that Vang had adequate time to review the PSR, addendum, and revised PSR with counsel, then addressed why his objections to the PSR failed. (*Id.* at 2–3.) First, while Vang did not have the opportunity to cross-examine CIs, the court noted that all CIs provided sworn testimony to a grand jury, which contained sufficient indicia of reliability. Second, the court found that even Vang's proposed amount of 4.787 kilograms of

5

methamphetamine was well within the guideline range calling for a base offense level of 38 as proposed by the PSR, and therefore, was not materially different from the 5.73 kilograms assumed in that report. Third, the court found Vang's designated role in the drug operation as a "supervisor" was adequately supported by evidence, as well as by his own admissions during the plea hearing, justifying an increase in the offense level by two. (*Id.* at 3–4.) Fourth, the court found a sufficient basis in the record for two additional, two-level increases: (1) Vang possessed a firearm at the property where a CI purchased methamphetamine; and (2) Vang maintained premises for manufacturing or delivering a controlled substance. Finally, the court acknowledged Vang's acceptance of responsibility, justifying a decrease in his offense level by three. (*Id.* at 4–6.)

The government advocated for a sentence within the guidelines of an offense level of 41. (No. 16-cr-59 (dkt. #88) 7–11.) According to the government, purity of the methamphetamine involved, defendant's prostitution of women, the involvement of guns, and defendant's criminal history all supported a sentence within the mandatory minimum. (*Id.*) In contrast, defense counsel acknowledged that as an addict Vang made some very poor choices harming both his family and the larger community, including keeping a firearm at the property where he sold drugs, while emphasizing that Vang now took responsibility for his actions. (*Id.* at 12–14.)

Vang also spoke at his sentencing, acknowledging his poor choices and shame in his actions. (*Id.* at 15–16.) Vang further stated that he was now "ready to face [his] addiction and be a better person," as well as vowing to make amends. (*Id.* at 16.) After discussing

the importance of his family, especially his children, Vang apologized directly to his family for the problems he had caused. (*Id.* at 16–17.)

The court sentenced Vang to serve 180 months in custody, to be served concurrent to sentences that may be imposed in pending circuit court cases in Eau Claire and Dunn counties. (*Id.* at 21.) Vang was also sentenced to 5 years of supervised release following his imprisonment. (*Id.*)

### E. Appeal

On April 19, 2017, Vang timely filed a Notice of Appeal. (No. 16-cr-59 (dkt. #77).) Requesting new counsel for his appeal, the Court of Appeals for the Seventh Circuit granted Vang's request on August 8, 2017, appointing Thomas W. Patton, Chief Federal Defender, as his new attorney. *United States v. Vang*, No. 17-1825 (dkt. #18) (7th Cir. Aug. 8, 2017). The same order outlined the briefing schedule. (*Id.*) Daniel J. Hillis of the Federal Public Defender's Office then filed a formal notice of appearance, complying with Circuit Rule 26.1 and Fed. R. App. P. 26.1. *Id.*, dkt. #19. On October 30, 2017, Hillis filed a motion to dismiss Vang's appeal for lack of merit. *Id.*, dkt. #23. The Seventh Circuit granted this motion that same day. *Id.*, dkt. #24.

## OPINION

Under 28 U.S.C. § 2255, Vang seeks to vacate, set aside, or correct his sentence on the ground that it violated his Sixth Amendment rights as follows: (1) his trial counsel was ineffective in a number of respects; and (2) his appellate counsel was ineffective for not communicating properly. A prisoner may obtain relief from his sentence under § 2255 on

grounds that the court imposed the sentence: (1) outside of its jurisdiction; (2) in violation of the Constitution; (3) in excess of the maximum authorized by law; or (4) in a miscarriage of justice due to a fundamental defect. 28 U.S.C. § 2255(a).

When a prisoner seeks relief under § 2255 on grounds of ineffective assistance of counsel in particular, his claims are evaluated under the exacting standard outlined in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, a petitioner must satisfy a two-prong test. *Id.* at 694. *First*, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable care. *Id.* at 687. *Second*, a defendant must prove that but for his attorney's errors, the proceedings would have had a different outcome. *Id.* at 693. The failure to come forward with *evidence* to prove either of these prongs is fatal to a habeas motion. *Gant v. United States*, 627 F.3d 677, 682 (7th Cir. 2010); *Galbraith v. United States*, 313 F.3d 1001, 109 (7th Cir. 2002). Moreover, a court is not required to hold an evidentiary hearing if the petitioner's allegations are not "detailed and specific" but only "vague, conclusory, or palpably incredible." *Gaylord v. United States*, 829 F.3d 500, 506–07 (7th Cir. 2016) (internal citations and quotations omitted). As explained below, defendant's claims of ineffective assistance of counsel fail under this standard.

### I. Vang's Trial Counsel

As for Vang's challenges to the performance of his trial counsel, Anthony Delyea, the *Strickland* standard specifically applies in the context of his entry of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Specifically, before allowing his client to enter a guilty plea, a reasonably competent attorney must "attempt to learn all of the facts of the case,

8

make an estimate of a likely sentence, and communicate the results of that analysis." *Gaylord*, 829 F.3d at 506 (7th Cir. 2016) (quoting *Moore v. Bryant*, 348 F.3d 238, 214 (7th Cir. 2003)). Where counsel's alleged error is a failure to investigate, prejudice turns on whether discovery of evidence would have led counsel to change his recommendations as to the plea. *Lockhart*, 474 U.S. at 59. When a petitioner claims that his attorney was deficient in plea negotiations in particular, he can only establish prejudice by demonstrating that the outcome of the plea process would have been different with competent advice. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012); *Missouri v. Frye*, 566 U.S. 134, 143 (2012).

The court must presume statements made under oath at a plea hearing are truthful. *United States v. Collins*, 796 F.3d 829, 834 (7th Cir. 2015) (citing *United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008)). To overcome this presumption and offer statements that contradict prior sworn testimony, a petitioner must provide a compelling explanation. *United States v. Collins*, 796 F.3d 829, 834 (7th Cir. 2015); *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005). Here, Vang alleges that Delyea did not meet the constitutionally objective standard of reasonable assistance related to his plea and sentencing in six ways:

(a) Delyea failed to investigate firearm ownership and later failed to object to a firearm penalty enhancement;

(b) Delyea failed to investigate allegations that Vang threatened others in connection with the criminal proceedings;

(c) Delyea failed to communicate adequately with Vang;

9

  (d) Delyea failed to file motions when preparing Vang's defense;

  (e) Delyea failed to negotiate a plea agreement; and

  (f) Delyea failed to object to the PSR.

Before explaining why Vang has failed to demonstrate that Delyea performed deficiently with respect to each of these six criticisms, it is appropriate to note that Vang's vague comments about prejudice are unsatisfactory. In fact, at no point does he actually explain what he would have done differently had Delyea done any of the six items listed differently. For example, Vang claims reliance on Delyea's assurances that he would investigate some of Vang's claims, such as his denial of gun ownership, but then acknowledges that Delyea never followed up with Vang regarding any of those claims. (*Id.* at 3–4.) Alternatively, Vang states that he did not think going to trial was a good idea because Delyea did not seem adequately prepared, but then fails to address whether he would have maintained a not guilty plea but for Delyea's ineffective assistance. Indeed, Vang neither asserts that he would have proceeded to trial but for Delyea's advice or lack of preparation, nor suggests that any plea negotiations would have been different but for his attorney's deficient performance. (Pl.'s Br. (dkt. #1); Pl.'s Reply (dkt. #14).) Finally, Vang's 180-month sentence is well below the 360–life guidelines range. Petitioner's failure to offer any specific explanation as to how he would have proceeded differently is fatal to his ineffective assistance of counsel claims. Having said that, petitioner has also failed to demonstrate that Delyea performed deficiently with respect to each of the six ways identified in his Memorandum. (Dkt. #4.)

## A. Firearm Ownership

Petitioner first asserts that Delyea's failure to investigate whether Vang owned a firearm, and his failure to object to the firearm enhancement, improperly lead to a penalty enhancement at sentencing. In fact, Vang's base offense level increased by two points for the firearms found among his drugs and drug paraphernalia upon execution of a lawful warrant. (No. 16-cr-59 (dkt. #40) ¶39.)

Nevertheless, petitioner asserts that if Delyea had investigated, he would have discovered that the firearms found in the execution of the search warrant did not actually belong to Vang. Even so, petitioner admits, as he must, that the two firearms were recovered during execution of a search warrant on premises devoted to drug dealing, and he does not explain away the fact that these firearms were recovered in the same room as methamphetamine, marijuana, a scale, and a large amount of cash. (No. 16-cr-59 (dkt. #40) ¶39.) Instead, he claims in his brief that he never "owned" the firearms that were found. (Pl.'s Br. (dkt. #4) 22.) Lacking specific evidence to the contrary, however, the close proximity to drugs and drug paraphernalia, coupled with the court's finding of Vang's supervisory role in methamphetamine distribution, satisfies the requirements for a firearm penalty enhancement based on his *possession* of these firearms. (No. 16-cr-59 (dkt. #40) ¶39; (dkt. #88) 4–5.) Because petitioner fails to come forward with objective evidence that firearms recovered in the search warrant were not connected to his distribution of methamphetamine, he has failed to show that Delyea's lack of investigation was either deficient or material.

B. **Failure to Investigate Threats**

Petitioner appears to have abandoned his claim that Delyea failed to investigate whether or not he threatened others in connection with criminal proceedings. (Pl.'s Reply (dkt. #14) 4.) Regardless, the PSR makes no mention of any allegations of threats in connection to Vang's sentence or the current criminal investigation. (No. 16-cr-59 (dkt. #40) 10–11.) Thus, any alleged deficient performance on Delyea's part in this respect was not only abandoned but did not prejudice Vang, and this ground for relief fails.

C. **Failure to Communicate**

Petitioner also claims that Delyea failed to communicate with him regarding his "defense." (Pl.'s Br. (dkt. #4) 11.) Specifically, Vang claims his hesitation to go to trial was due to a lack of confidence in Delyea's preparation. (Pl.'s Reply (dkt. #14) 6.) Even accepting that he had concerns about Delyea's readiness for trial, however, the standard of prejudice requires proof that "but for" an attorney's deficient performance, the defendant would have gone to trial rather plead guilty. *Lockhart*, 474 U.S. at 59. Here, petitioner does not assert that he would have gone to trial but for a lack of communication (and therefore, a lack of confidence in his attorney's performance). (Pl.'s Reply (dkt. #14).) More problematic still, petitioner does not specify *what* communication Delyea failed to provide, nor does he offer detail as to *how* Delyea's communications actually fell below a standard of reasonableness. Instead, petitioner falls back on the same, vague conclusory statements that, as previously explained, are insufficient to rebut the presumption that Delyea's communication was reasonable. *Gaylord*, 829 F.3d at 506–07.

### D. Failure to File Motions

Petitioner next asserts that Delyea failed to file motions in Vang's defense. In particular, he claims that Delyea ought to have filed: (1) a motion for discovery; (2) a motion for *Brady/Giglio* materials; (3) a motion to reveal the identities of Confidential Informants; and (4) a motion for equal access to Confidential Informants for purposes of interviews. While the record of the proceedings confirms that Delyea did not pursue substantive motions, petitioner fails to state with any specificity what he sought from those motions. Instead, petitioner generally asserts that without those motions he was unable to test the strength of the government's case. (Pl.'s Br. (dkt. #4) 13–14.)

First, the government did provide exculpatory discovery materials to Delyea, (No. 16-cr-59 (dkt. #28)) and neither Delyea nor petitioner objected to the concealment of CI identities at the plea hearing or sentencing. (Dkt. #46.) Instead, petitioner admitted his repeated sales of meth to these same CIs during his plea, as well as the accuracy of the government's proffer, and at sentencing, the court acknowledged an objection but stated its reasons for maintaining witness anonymity. (Dkt. #88, at 3.) For all these reasons, the court also cannot conclude that Delyea's lack of motions was deficient or material. As importantly, petitioner has again failed to explain how the outcome would have differed. Accordingly, this ground fails as well.

### E. Failure to Negotiate a Plea Bargain

Petitioner further claims that Delyea performed below standards by failing to negotiate a plea deal. (Pl.'s Br. (dkt. #4) 19.) Specifically, he represents that Delyea encouraged him to cooperate with government officials in an attempt to secure a plea

13

bargain, but the government was unsatisfied with the information provided and ended an interview. (*Id.*) Thus, by his own account, petitioner admits that Delyea *did* attempt to negotiate a plea deal, but was blocked by *Vang's* failure to offer anything of value, at least from the government's perspective. Moreover, petitioner has offered *no* specifics as to what Delyea could have done differently to negotiate a better deal for him given the mountain of evidence in the form of CI testimony, not to mention an audio and visual recording of a controlled drug buy, all of which Vang admitted under oath was basically accurate. Finally, petitioner has not suggested how he was prejudiced by the lack of a plea deal. As set forth above, during the plea hearing itself, the government offered to drop the first three counts of the indictment if Vang agreed to plead guilty to count 4. (No. 16-cr-59 (dkt. #37) 22.) The government represented that this is the same offer it would have presented as a formal plea agreement. (*Id.* at 19–20.) Since petitioner does not suggest that the government had ever indicated a different offer was available, much less that there was evidence or information Delyea could have provided that would have resulted in a better offer, he has failed to establish either *Strickland* prong with respect to this claim.

### F. Failure to Object to the Presentence Report

Finally, petitioner wrongly claims that Delyea failed to object to the PSR. (Pl.'s Br. (dkt. #4) 22.) In fact, Delyea did object: asking that specific information be struck from the report, objecting to the characterization of Vang's role in the crime, and requesting a variance from the sentencing guideline for methamphetamine. (*See* No. 16-cr-59 (dkt. #46) 1.) At sentencing, the court responded to defense's objections to the PSR either by agreeing to ignore contested information or addressing why it was relevant over objection.

(Dkt. #88, at 2–6.) Nor has petitioner identified a basis for any other objection (beyond the firearm objection discussed above), much less proven deficient performance because Delyea did not raise it. Indeed, Delyea's actual objections *benefitted* Vang: the court having removed two conditions of supervision and agreed to ignore all or part of information from six paragraphs in the PSR at the time of sentencing. (*See* No. 16-cr-59 (dkt. #46); (dkt. #54) 6, 11, 13; (dkt. #88) 11–14, 22–23.) Accordingly, the court can again find no basis to conclude that Delyea's handling of the PSR was deficient.

## II. Appellate Counsel

When evaluating claims that appellate counsel provided ineffective assistance, courts again evaluate the claim under the *Strickland* standard. *Howard v. Gramley*, 225 F.3d 784, 790-91 (7th Cir. 2000); *see also Winters v. Miller*, 274 F.3d 1161, 1168 (7th Cir. 2001). In particular, as with trial counsel, appellate counsel's performance is measured against that of an objectively reasonable attorney. *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010). However, since charged with winnowing out weaker arguments and focusing on key issues most likely to succeed, *Knox v. United States*, 400 F.3d 519, 521(7th Cir. 2005), appellate counsel is not required to raise *all* non-frivolous issues. *Id.*; *Page v. United States*, 884 F.2d 300, 302 (1989). Accordingly, courts evaluate appellate counsel's performance based on the appealable issues available and permit counsel to make strategic choices, including asking whether there is a reasonable probability that raising the issue(s) would have affected the outcome of the appeal. *Gramley*, 255 F.3d at 791. If appellate counsel failed to raise significant and obvious issues, courts must also weigh whether the

issues not raised are stronger than the issues appellate counsel did raise. *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985). Only if courts find that appellate counsel did not raise stronger, obvious issues has a petitioner overcome the presumption of effective counsel. *Id.*

Petitioner claims that Delyea was ineffective in failing to communicate with him, and that Daniel J. Hillis, his second appointed, appellate counsel, was ineffective in his lack of communications and for failing to raise two issues on appeal. As for Delyea's performance, petitioner does not develop his argument related to a claimed lack of communication. Even assuming that Delyea's communication was deficient, however, petitioner has not shown prejudice since he succeeded in his motion for new counsel on appeal. *See United States v. Vang*, No 17-1825 (dkt. #18) (7th Cir. Aug. 8, 2017).

Similar to petitioner's assertion of Delyea's claimed failure to communicate, Hillis's alleged failure to communicate fails for lack of substantiating evidence and prejudice. (No. 17-cv-902 (dkt. #4) 25.) In particular, petitioner has not described, much less submitted any evidence related to, the nature or amount of communication between Hillis and himself. As importantly, petitioner has not developed an argument as to how Hillis's communications, or lack thereof, failed to meet the professional reasonableness standard. Accordingly, this criticism fails, just as did his claim against Delyea, for lack of proof of a deficient performance or prejudice.

Petitioner also claims that Hillis provided ineffective assistance of counsel when he withdrew Vang's appeal, rather than raise two issues on appeal. Specifically, he argues Hillis should have maintained that the district court erred by including: (1) a penalty

16

enhancement for Vang's role in the offense; and (2) a penalty enhancement for maintaining drug premises. (No. 17-cv-902 (dkt. #4) 26.) While petitioner may well desire to argue now that his appellate counsel should have raised these two issues on appeal, but in doing so, he ignores his consent at the time to the motion withdrawing his appeal entirely. *United States v. Vang*, No. 17-1825 (dkt. #23) (7th Cir. Oct. 30, 2017). Nor does he explain why the court should disregard this consent. Moreover, petitioner again offers no evidence that raising either of these issues on appeal would have affected its outcome. Especially in light of his past consent to withdraw any appeal, petitioner has failed to establish either *Strickland* prong with respect to Hillis's performance.

Under Rule 11 of the Rules Governing Section 2255 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. The question is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). For the reasons explained above, Vang's motion is without merit and reasonable jurists would not debate whether the result should be different. Accordingly, the court will not issue a certificate of appealability.

ORDER

IT IS ORDERED that:

1) Petitioner Pheng Vang's motion to vacate under 28 U.S.C. § 2255 is DENIED.

2) A certificate of appealability will not issue.

3) The clerk of court is directed to close this case.

Entered this 29th day of December, 2021.

                              BY THE COURT:

                              /s/

                              _____
                              WILLIAM M. CONLEY
                              District Judge